**SO ORDERED.**

**SIGNED this 02 day of October, 2008.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **DEN-MARK CONSTRUCTION, INC.** | **08-02764-8-RDD** |
| **DEBTOR** | |

### ORDER DENYING STAY PENDING APPEAL

This matter is before the court on the motion of SunTrust Bank ("SunTrust") to stay the court's order allowing the debtor's post-petition financing with Capital Bank pending appeal to the District Court. A hearing was held in Greenville, North Carolina on September 16, 2008.

Den-Mark Construction, Inc. and several related entities filed bankruptcy on April 24, 2008. On May 28, 2008, the cases were consolidated for administrative purposes into the above-captioned case. On June 9, 2008, the debtor filed a motion to approve post-petition financing with Capital Bank in the amount of $2,200,000.00. On June 25, 2008, the debtor filed a supplement to its motion in the form of a term sheet from Capital Bank proposing financing totaling $2,768,000.00. On June 26, 2008, the court approved the debtor's motion upon the terms provided in the term sheet filed on June 25, 2008. On July 3, 2008, upon the request of SunTrust Bank, the court reconsidered its oral ruling of June 26, 2008, and amended its order, based upon an agreement reached by the parties, to allow

financing by Capital Bank in the amount of $2,568,000.00.  The order containing the court's ruling was entered on August 6, 2008, after being reviewed by all parties.  On August 14, 2008, SunTrust Bank appealed the court's order approving the post-petition financing with Capital Bank to the District Court for the Eastern District of North Carolina and now seeks a stay of the court's order pending that appeal.

Both parties agree that the factors to be considered by the court in determining whether a stay of the August 6, 2008 order should be allowed are:

(1)     the likelihood that the movant will prevail on the merits of the appeal;

(2)     whether the movant will suffer irreparable injury if the stay is denied;

(3)     whether other parties will not be substantially harmed by the stay; and

(4)     whether the public interest will be served by granting the stay.

Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 811 (4th Cir. 1992); Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970); Tenzer Greenblatt, LLP v. New British Woods Associates, 1996 U.S. Dist. LEXIS 14584 (E.D.N.C. Sept. 20, 1996); In re Convenience USA, Inc., 290 B.R. 558, 562 (Bankr. M.D.N.C. 2003); Hoekstra v. Oak Cluster Community Council (In re Hoekstra), 268 B.R. 904, 906 (Bankr. E.D. Va. 2000).

The balance of harms to the parties involved regarding a stay during the appeal is practically even.  Counsel for SunTrust argues that, should the stay be denied, Capital Bank could proceed with loaning funds to the debtor pursuant to the order of August 6, 2008, which would allow SunTrust's lien to be primed and would cause the appeal of the court's order to become moot.  Counsel for the debtor argues that, should the stay be allowed, the debtor's progress on its most promising subdivision, Winston Ridge, would be stalled.

Although there appears to be no public interest involved, there are other creditors whose interests would be affected by the post-petition financing. These creditors include the class of 44A lienholders, who are represented as a committee. Counsel for the committee appeared at the hearing on post-petition financing and indicated the committee's support of the financing. He argued that the financing would provide an approximate payout to the 44A lienholders of $600,000.00 during the reorganization. On the other hand, if the financing were not allowed, counsel for the committee argued that the debtors might be forced out of business, which would provide no benefit to the 44A lienholders. Counsel for Stock Building Supply and the bankruptcy administrator's office voiced their support and agreement with the position of counsel for the 44A lienholders' committee. The interests of the other creditors in this case lies in favor of the allowance of the debtor's post-petition financing, and such creditors may be harmed by a stay pending appeal of the court's order.

Therefore, the court's inquiry in determining whether to grant a stay of the August 6, 2008 order pending appeal must rest with the likelihood that the movant will prevail on the merits of its appeal.

Counsel for SunTrust argues that there is a likelihood of SunTrust succeeding on the merits on appeal, based on the three areas referenced in its notice of appeal. Those areas are the valuation of the property at issue and the manner in which the valuation relates to the adequate protection of SunTrust's lien; the efforts of the debtor to obtain other financing; and that the financing motion came in the form of a disguised plan of reorganization as related to SunTrust's interest and the way in which SunTrust will be dealt with over the years of the plan.

First, counsel for SunTrust argues that SunTrust's equity cushion would decline from nearly 20% to approximately 10% upon funding of the loan made by Capital Bank. Counsel also indicates that the findings by the court with respect to value at the July 3, 2008 hearing are highly suspect in

today's economic climate, referring to the government bailout of Freddie Mac and Fannie Mae, the sale of Merrill Lynch, and the bankruptcy of Lehman Brothers. Counsel argues that, based upon these recent happenings in the economy, the court cannot value SunTrust's equity cushion with the certainty that is required by the Bankruptcy Code. Counsel further argues that the certainty of valuation required by 11 U.S.C. § 364(d) is of the highest level, as the court is allowing the priming of a senior lender's lien. Finally, counsel argues that the court discounted the expert testimony offered by SunTrust in favor of the lay testimony offered by the debtors with respect to valuation. In looking at valuation, counsel for SunTrust cites In re First South Savings Association, 820 F.2nd 700 (5th Cir. 1987), in which the 5th Circuit found that both the bankruptcy court and the district court abused its discretion in denying a creditor's motion for stay pending the appeal of a post-petition financing order which granted a superpriority lien. Counsel for the debtor argues that the court in First South made its decision based upon the lack of evidence of valuation of property by the lower courts.

Second, counsel for SunTrust argues that, although the court's order indicates the debtor made efforts to locate additional financing, the court's transcript did not so indicate. Counsel argues that, although this is a factual issue, SunTrust is likely to succeed on appeal.

Third, counsel for SunTrust argues that the debtor has used the concept of § 364(d) to reorient priorities that would otherwise be handled under the debtor's plan of reorganization. Counsel indicates that, by raising various motions prior to the filing and confirmation of the debtor's plan, the debtor is virtually accomplishing its plan.

Based upon the foregoing, counsel for SunTrust argues that the stay should be allowed in order to maintain the status quo pending the appeal. Counsel explains that, without the stay pending appeal, SunTrust could have its first-priority lien taken away by § 364(d), and would have to pay off

4

the first-priority lien to Capital Bank if a default occurs in order to maintain its position, in the event that the post-petition financing with Capital Bank comes to fruition.

Counsel for the debtor argues that the valuation issue was decided by the court based on both expert and lay testimony, the credibility of the witnesses, and the assumptions made by those witnesses. Valuation is a factual matter, so it must be clearly erroneous in order to be overturned on appeal. Therefore, SunTrust has very little likelihood of success on the merits with regard to the court's determination of valuation.

Further, SunTrust argues that the court's valuation is clearly erroneous based upon today's market. Counsel for the debtor indicates that the court considered the economy at the time of its ruling, including the Raleigh-area real estate market in comparison to the nationwide real estate market. The district court will have to look at the decision made by the bankruptcy court considering the economic situation at that time. Counsel argues that the delay in having the order drafted and circulated should not be considered when determining valuation. Counsel indicates that the court considered both the expert testimony presented by SunTrust and the lay testimony presented by the debtor in making its determination regarding the valuation of the property. The court came to its conclusion regarding SunTrust's equity cushion by weighing and considering all of the testimony presented.

In response to SunTrust's argument that there was insufficient evidence presented to find that the debtor sought alternative financing, counsel for the debtor proffers that the record of the June 26, 2008 and July 3, 2008 hearings evidence that Mr. Matthew Winslow and Mr. Dennis Cyrus gave sufficient testimony regarding the debtor's attempts to find alternative financing. SunTrust offered no evidence to dispute their testimony, and therefore, will not be successful on arguing this issue on appeal.

Finally, counsel for the debtor argues that 11 U.S.C. § 364(d) contemplates the extension of new credit and reordering of lien priorities, by providing a means of obtaining post-petition credit prior to confirmation of the plan. Although the debtor, through its motion for post-petition financing, has proposed some treatment with respect to SunTrust's lien on the Winston Ridge property, SunTrust also has liens on various other developments of the debtor. The debtor has yet to propose a plan of reorganization with regard to those properties, although the values of these developments were taken into account by the court when considering SunTrust's equity cushion and adequate protection interests.

With regard to valuation, the court made findings regarding the "as is" value of Winston Ridge, as well as the "as completed" value of Winston Ridge, based upon the testimony of Mr. Dennis Cyrus, one of the owners of the debtor-entities; Mr. Paul Snow, a commercial real estate appraiser; and several professional realtors. The court also considered several appraisals of the property with regard to "as is" and "as completed" values. Mr. Snow was offered as an expert witness by SunTrust, while Cyrus and the realtors were offered as witnesses by the debtor.

Counsel for the debtors provided two appraisals prepared by Mr. John M. McBrayer, dated September 14, 2007 and December 20, 2007. The September 14, 2007 report indicated an "as is" value for the property at Winston Ridge of $4,200,000.00. For the completed lots in Phase I, Mr. McBrayer indicated an "as is" value of $1,440,000.00. That report further indicated "upon completion" values for Phase IIA of $2,770,000.00, for Phase IIIA of $4,510,000.00, and for the remaining excess land in Phases IIA and IIIA of $2,700,000.00. Mr. McBrayer's report for December 20, 2007, after further development of the property, indicated an "as is" value for the property at Winston Ridge as $6,020,000.00. For the remaining completed lots in Phase I, after the

sale of lots since the prior appraisal, Mr. McBrayer indicated an "as is" value of $427,000.00.  That report further indicated "upon completion" values for Phase IIA of $2,750,000.00, for Phase IIB of $2,100,000.00 and for the remaining excess land in Phase II of $3,600,000.00.

Mr. Cyrus testified that Winston Ridge is in a favorable location, north of Raleigh, off of highway U.S. 1.  He also indicated that the properties in Winston Ridge are in a good price point for this economy, as higher priced homes are harder to sell.  Mr. Cyrus also testified that, as the financing by Capital Bank was used to make improvements to the Winston Ridge property, it would eliminate two letters of credit provided to the debtor and pledged by SunTrust in the amounts of $540,000.00 and $80,000.00.  Mr. Cyrus testified that the debtor anticipates a net profit of $13,565,000.00 from ordinary course of business sales of lots and homes in Winston Ridge.  This projected revenue stream would repay the debt to Capital, SunTrust and all lien claimants.  Mr. Cyrus confirmed his belief that the appraisals performed by Mr. McBrayer were accurate, and proffered that the Winston Ridge property, in his opinion, had increased beyond the December 20, 2007 appraisal value since that time.

Mr. Snow testified that, based upon his appraisal dated June 12, 2008, the Winston Ridge property would have an "as is" value of $3,110,000.00.  Mr. Snow based his appraisal on the value of Phases I and IIA, which are already in development, less the costs of completing the necessary development of those phases, plus the value of excess land, which has yet to be developed.  Mr. Snow did not provide an "as completed" value for the entire property.

The realtors who testified indicated that, although the nationwide real estate market has slumped, the market in the Triangle area of North Carolina has remained a good market. Mr. Audie Barefoot, a realtor with a marketing company in Raleigh indicated that Winston Ridge is well-located, as the Youngsville and southern Franklin County areas are growing.  He further indicated that Winston Ridge is in the most popular market price range.  Ms. Alice Ray, a broker with Re/Max

Hometown in Wake Forest, discussed the above-average quality of the debtor's homes and the debtor's excellent customer service reputation.

Counsel for SunTrust cites In re First South Savings Association, 820 F.2d 700 (5th Cir. 1987) as to the appellate court's obligation to review the way in which the hearing court valued property in determining whether a stay pending appeal should be issued. However, the Fifth Circuit in that case determined that there was insufficient evidence in the court's order and in the record to support the district court's and bankruptcy court's findings with regard to valuation and to the sufficiency of the adequate protection being offered to the creditor in that case. In this case, the court considered all of the preceding evidence, as well as the testimony of realtors regarding the current market conditions in the area surrounding Winston Ridge, in arriving at its valuation of the Winston Ridge property. The court determined the "as completed" value of Winston Ridge to be $6,300,000.00 and the "as completed" value of Ironwood to be $4,000,000.00,[1] totaling $10,300,000.00. The court determined the debt owed to SunTrust to be $3,200,000.00 on the Winston Ridge property and $3,400,000.00 on the Ironwood property.[2] These debts, combined with the $2,568,000.00 to be loaned by Capital Bank bring the total debt on these properties to $9,168,000.00, which would yield

---

[1] Ironwood is the other development of the debtor's, securing SunTrust's loan, which would be affected by the post-petition financing with Capital Bank. The testimony of appraiser, Paul Snow, indicated an "as is" value of $3,080,000.00 for Ironwood. He further indicated that the value of Ironwood would increase by at least $75,000.00 with the addition of an entranceway. Mr. James Allen, Jr., a realtor with Prudential Carolina Realty who indicated his familiarity with Ironwood, also indicated that the entranceway would make a substantial difference in sales of property at Ironwood. The debtor valued the Ironwood property as $2,275,000.00 for Phase 1A, $3,315,000.00 for Phase 1B, and $2,750,000.00 for Phase 2, for a total of $8,340,000.00, in Schedule A. Based upon the real estate market at the time of the July 3, 2008 hearing, and considering the testimony presented by Mr. Snow, Mr. Allen, and Mr. Cyrus at the hearing, as well as the debtor's schedules, the court valued the Ironwood property at $4,000,000.00.

[2] The debt of each property was stipulated by SunTrust.

a 10.99%, or 11%, equity cushion for SunTrust. After the release of the $633,598.96 letters of credit issued by SunTrust, upon completion of additional work at Winston Ridge, SunTrust's equity cushion would increase to 17.14%. In addition, SunTrust will be receiving $12,000.00 per month in adequate protection payments from the debtor.[3]

Based on the preceding information, the court finds it unlikely that the district court will consider its valuation of the Winston Ridge property, Ironwood property and award of adequate protection to be clearly erroneous, which is the standard to be applied to findings of fact on appeal pursuant to Bankruptcy Rule 8013. Based upon those numbers, the court found that SunTrust would still have a sufficient equity cushion, when supported by the imminent cancellation of letters of credit upon the completion of further development, the improvements made to the property and its increase in value, as well as the monthly adequate protection payments required by the court to be paid by the debtor to SunTrust.

As to SunTrust's argument that there is insufficient evidence in the record to support the court's finding regarding the debtor's attempts to obtain alternative financing, the court heard the testimony of Mr. Matthew Winslow, vice-president of acquisitions and development for two of the debtor-entities, and to the testimony of Mr. Dennis Cyrus. Mr. Winslow testified that the debtor was originally financed for this project through SunTrust and anticipated Suntrust's continued funding for Winston Ridge and other projects. In October 2007, the debtor was denied funding by SunTrust for Phases II and III of Winston Ridge. In December 2007, the debtor submitted another request to SunTrust for funding of Winston Ridge. Additional information was requested by SunTrust, which was provided by Mr. Winslow. However, as of the July 3, 2008 hearing date, SunTrust had not

---

[3] An interest rate of 4.5% on $3,200,000.00 equated to a monthly adequate protection payment of $12,000.00.

responded to the debtor's request for funding. Mr. Winslow further testified that the debtor had sought funding from sources other than SunTrust and Capital Bank, including having discussions with private investors since May 2008, but had been unsuccessful in finding alternative funding.

Mr. Cyrus testified that the debtor had discussed funding options with Capital Bank and other banks, which included offering a secured lien position behind SunTrust. However, no other bank was willing to finance the debtor, and Capital Bank was only willing to finance if granted a first-priority lien position. Mr. Cyrus confirmed Mr. Winslow's testimony regarding the dealings between the debtor and SunTrust with regard to the Winston Ridge property. He further indicated that the same information had been provided to both SunTrust and Capital Bank with regard to financing. While SunTrust had never responded, Capital Bank responded within ten days. Based upon the evidentiary testimony of Mr. Winslow and Mr. Cyrus, the court finds that there is not a likelihood of SunTrust's success on the merits with regard to this argument.

SunTrust's final argument on appeal is that the debtor is being allowed to usurp the necessity of a plan of reorganization as to SunTrust by using the provisions of 11 U.S.C. § 364 to determine the plan treatment of SunTrust. 11 U.S.C. § 364(d) provides

> (d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>     (A) the trustee is unable to obtain such credit otherwise; and
>     (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>   (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

As noted by counsel for the debtor, this provision allows for the subordination of SunTrust's lien, which defeats the argument of SunTrust.

In addition, the court notes that the final provisions of the term sheet between the debtor and Capital Bank were determined by the affected parties – the debtor, Capital Bank, and SunTrust Bank – and were presented to the court as the agreement of the parties. This agreement is also noted in the August 6, 2008 order, where paragraph 10.a. states, "The original term sheet included the funding of an interest reserve in the amount of $528,000.00; however, the parties agreed to reduce the amount to $368,000.00." Because the Code allows for the financing approved in the August 6, 2008 order and because SunTrust assented to the treatment by agreeing to the terms to be included in the term sheet, the court finds that SunTrust is unlikely to succeed on the merits on this argument as well.

In conclusion, the court finds that SunTrust has failed to show it is likely to be successful on any of the three bases for appeal cited by SunTrust in its motion. Because SunTrust has failed to establish that the factors to be considered in determining whether a stay of the August 6, 2008 order should be allowed pending its appeal to the district court weigh in its favor, the motion to stay the order of August 6, 2008 is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**